**BINGHAM, LTD., et al.,**
**Plaintiffs-Appellants,**

**v.**

**William French SMITH, Attorney**
**General of the United States, et**
**al., Defendants-Appellees.**

**No. 85–8100.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 29, 1985.

**1070**

Tyrus R. Atkinson, Jr., Atlanta, Ga., for plaintiffs-appellants.

Larry Thompson, U.S. Atty., Albert L. Kemp, Jr., Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Appellants Sanford L. Brygider and Bingham, Ltd., sought injunctive and declaratory relief against defendant (hereinafter referred to as the government) for the latter's allegedly unconstitutional interpretation of 15 U.S.C. § 1241 *et seq.* ..., the "Switchblade Knife Act," as applied to appellants.

## I. STATEMENT OF THE CASE

Appellant Brygider is President of Appellant Bingham. Bingham is a Georgia corporation with its principal place of business in Norcross, Georgia. It imports, assembles, and sells in interstate and intrastate commerce a device marketed under the trade names "Pocketscribe" and, more colorfully, "Guardfather." This device consists of two primary parts: (1) a handle measuring approximately one-half inch in diameter and approximately four inches long which houses (2) a sharp pointed shaft or metal spike four inches long that springs out of the end of the handle and locks into place when a button or clip located on the handle is pressed.

During the summer of 1983, a special agent of the Atlanta office of the Federal Bureau of Investigation orally informed Brygider that the marketing and sale of the "Guardfather" and "Pocketscribe" was in violation of the "Switchblade Knife Act." For further questions as to the interpretation of the Act, the agent referred Brygider to the United States Attorney for the Northern District of Georgia, to whom the matter had been referred for prosecution. The United States Attorney, however, declined prosecution. The record does not reveal nor the parties' brief discuss the reason prosecution was declined.

Appellants thereafter presented to the U.S. Attorney a legal opinion prepared by their counsel prior to the visit of the FBI agent. In the opinion, appellant's counsel concluded that the Act did not apply, as the appellant's product was not a knife, and thus *a fortiori,* not a switchblade knife.

In a letter to the U.S. Attorney dated July 21, 1983, present counsel for appellants sought written assurance that appellants could continue marketing the "Pocketscribe" and "Guardfather" without fear of prosecution. Referring to an assistant U.S. Attorney, counsel wrote, "Mr. Brown tells me that no criminal prosecution will be instituted against my client." Assistant U.S. Attorney Charles Brown responded in a letter dated September 6, 1983:

> I wish to note that in your letter of July 21, 1983, you state that I informed you 'no criminal prosecution will be instituted against my client.' The essence of my statement was that no criminal prosecution would be instituted against your client *if* they ceased to manufacture and distribute the weapon. (emphasis in original)
>
> It is the belief of this office that the manufacture and distribution of the "Scribe" or "Guardfather" is a violation of Title 15, United States Code, Section 1241 through 1244. Therefore, the continued manufacture and distribution of this weapon is subject to the criminal provisions of those sections.

On February 21, 1984, appellant filed its complaint for a declaratory judgment and an injunction, alleging that the government's interpretation of the "Switchblade Knife Act" violated (1) Article I, Section 8 of the Constitution; (2) Fifth Amendment by depriving appellant Bingham, its shareholders and officers, of property without due process of law; (3) appellant's right to contract, in violation of privileges and immunities clause of Article IV, Section 2; (4) appellant's guarantee of the pursuit of hap-

piness as guaranteed by Fifth Amendment; (5) appellant's right to earn a livelihood, in violation of Article IV, Section 2. The appellant alleged that the court had jurisdiction under 28 U.S.C. §§ 1331 and 1346.

The defendant filed a motion for summary judgment on the following grounds (1) lack of subject matter jurisdiction; (2) lack of justiciable case or controversy; (3) constitutionality of "Switchblade Knife Act;" (4) correctness of defendant's interpretation of Act; (5) failure of appellant to satisfy the standard for injunctive relief.

Along with its motion, appellee filed a Statement of Material Facts. In response, appellant filed a Statement of Material Facts as to Which it is Contended There Exists a Genuine Issue to be Tried and the affidavit of an alleged knife expert.

The district court granted appellee's motion for summary judgment on the ground that this case presents no justiciable case or controversy. The court took its facts from appellee's Statement of Material Facts since appellant failed to respond specifically to the facts contained therein. Because of this failure, the facts were deemed by Local Rule 220–5(b)(2) to be admitted. Appellants filed a timely appeal.

## II. ISSUES

Although the parties raise a number of issues, only the justiciability and jurisdictional issues seem appropriate for appellate consideration.

## III. DISCUSSION

The district court concluded that this case does not present a justiciable case or controversy because appellants were not threatened with prosecution. Appellants attack this conclusion on three fronts. Appellants contend first that the court mischaracterized the facts, second, that the court misapplied the law, and third, that the court made impermissible findings of fact on motion for summary judgment.

We agree with the appellants that the district court's characterization of the facts is misleading, doubtless due to the incomplete statement in the government's statement of material facts. After reading the court's opinion one is left with the impression that the appellant simply asked the United States Attorney's office about the legality of its interstate sale of the "Guardfather" and "Pocketscribe" and then filed suit when this opinion conflicted with appellant's own legal opinion. The court failed to mention in its discussion the fact that appellant's inquiry was prompted by an FBI agent's telling appellant Brygider that the sale of these products was illegal, and then referring appellant to the U.S. Attorney's office. Moreover, the court's opinion quotes only the last paragraph of the letter from Assistant U.S. Attorney Charles Brown, which states:

It is the belief of this office that the manufacture and distribution of the "Scribe" or "Guardfather" is a violation of Title 15, United States Code, Section 1241 through 1244. Therefore, the continued manufacture and distribution of this weapon is subject to the criminal provisions of those sections.

This paragraph indeed sounds like a mere advisory opinion. The paragraph immediately above the one which the court quoted, however, sounds more like a threat. It says that appellants would not be prosecuted *if* they stopped the sale and manufacture of these products. It is significant that the word "if" was italicized. Another factor which causes us to disagree with the district court on this point is a preliminary statement signed by all the parties. It states, "Plaintiff has been advised by the United States Department of Justice to stop distributing plaintiff's product, the 'Guardfather' or 'Pocketscribe' in interstate commerce *or face prosecution* under the 'Switchblade knife Act,' Title 15, U.S.C. Sec. 1241 *et seq.* ...." (emphasis added)

The district court points out that its statement of facts came from appellee's Statement of Material Facts pursuant to Local Rule 220–5(b)(2). It quotes only that part of the letter from U.S. Attorney Brown which sounds advisory. However, it cites the letter as "Defendant's Exhibit

8." [1] The entire letter, therefore, was before the court.

We agree with the appellant that the district court improperly applied the law, due probably to its understanding that only the paragraph it quoted was the extent of the government's alleged "threat." The court cited *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1946) for the proposition that here there was no "direct threat of punishment against named [party] . . . for a completed act." The court concluded that if the actions of the United States Attorney here were a threat at all, they were only a general threat not sufficient to create a justiciable cause or controversy. For this proposition, the court cites *Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941). In *Watson v. Buck*, however, the threat was much more general than is the case here. In its opinion, the court stated:

> The most that can possibly be gathered from the meager record references to this vital allegation of complainant's bill is that though no suits had been threatened, and no criminal or civil proceedings instituted, and no particular proceedings contemplated, the state officials stood ready to perform their duties under their oath of office should they acquire knowledge of violation. . . .

■ We conclude that resolution of this appeal must be based on our decision whether the letter from the U.S. Attorney was, under the circumstances then existing, a "direct threat" of prosecution. This follows from the Supreme Court's decision in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1973). *Steffel* dealt with the power of a federal court to enter a declaratory judgment against a state prosecutor when no such prosecution had been commenced in the state court. Such power was challenged on the ground of lack of "actual controversy." In that case, the Court found the pleaded facts amounted to a direct threat. The standard of proof required to establish an actual

controversy is in no way different from that required in the case of an action seeking a declaratory judgment involving a threatened federal prosecution. The facts in *Steffel* as stated by the Court were as follows.

> On October 8, 1970, while petitioner and other individuals were distributing handbills protesting American involvement in Vietnam on an exterior sidewalk of the North DeKalb Shopping Center, shopping center employees asked them to stop handbilling and leave. They declined to do so, and police officers were summoned. The officers told them that they would be arrested if they did not stop handbilling. The group then left to avoid arrest. Two days later petitioner and a companion returned to the shopping center and again began handbilling. The manager of the center called the police, and petitioner and his companion were once again told that failure to stop their handbilling would result in their arrests. Petitioner left to avoid arrest. His companion stayed, however, continued handbilling, and was arrested and subsequently arraigned on a charge of criminal trespass in violation of § 26-1503. Petitioner alleged in his complaint that, although he desired to return to the shopping center to distribute handbills, he had not done so because of his concern that he, too, would be arrested for violation of § 26-1503; the parties stipulated that, if petitioner returned and refused upon request to stop handbilling, a warrant would be sworn out and he might be arrested and charged with a violation of the Georgia statute.

415 U.S. at 455-56, 94 S.Ct. at 1213-14. (Footnotes omitted.)

■ The question narrows down to whether the facts in this case are to be equated with those in *Steffel*. In holding that they should not be so equated, the trial court failed to consider the first paragraph in the letter from Assistant District Attorney Brown: "The essence of my

---

**1.** This is actually government "Exhibit B."

statement was that no criminal prosecution would be instituted against your client *if* they ceased to manufacture and distribute the weapon." The Court dealt with the matter as if the only thing stated by the prosecuting officers was "the continued manufacture and distribution of this weapon is subject to the criminal provisions of those sections."

To the contrary, we think that the language in the first paragraph carried the clearest of implications that there would be a prosecution *unless* they ceased to manufacture and distribute the weapon. Nor is this a generalized threat as held by the trial court. It was specific as to the persons who were threatened and it was given under circumstances that made it much more threatening in that the special agent of the FBI had already recommended prosecution previously.

It is not seriously contended by the government that where such a threat exists, there would be a want of an actual case or controversy before the Court. We conclude that there was a direct threat here.

## IV. DISCUSSION

The decision of the district court to the contrary was error. Therefore, the decision is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.