BINGHAM, LTD., and Sanford L. Brygider, President of Bingham, Ltd., Plaintiffs-Appellants,

v.

Edwin MEESE, III,* et al., Defendants-Appellees.

No. 86–8577

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

May 18, 1987.

---

\* When this action was commenced the named defendant was "William French Smith, Attorney General of the United States." The caption has been altered pursuant to Fed.R.Civ.P. 25(d) to reflect succession of Edwin Meese, III, to that office.

Tyrus R. Atkinson, Jr., Atlanta, Ga., for plaintiffs-appellants.

Robert L. Barr, U.S. Atty., Albert L. Kemp, Jr., Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before RONEY, Chief Judge, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

Bingham, Ltd. brought this action for declaratory and injunctive relief against Edwin Meese, III, as Attorney General of the United States, and several other defendants, seeking an interpretation of the Switchblade Knife Act, 15 U.S.C.A. §§ 1241 *et seq.* Specifically, Bingham asked the district court to declare that its product was not proscribed by the Act, or, that the Act itself was unconstitutional as applied to this product. We affirm the district court's grant of defendants' motion for summary judgment.

Plaintiffs import, assemble and sell in intrastate and interstate commerce, a product marketed under the trade name "Guardfather." This device consists of a handle which houses a sharp-pointed metal shaft approximately four inches long which springs out of the handle and locks into place when a button or clip located on the handle is pressed.

An agent of the Federal Bureau of Investigation orally informed plaintiffs that knowingly introducing, distributing or transporting this device in interstate commerce is a violation of the Switchblade Knife Act. Plaintiffs then presented to the United States Attorney for the Northern District of Georgia a letter from an attorney with the opinion that the Act did not apply to the "Guardfather." Plaintiffs requested a written response upon which they could rely to conduct their future affairs. An Assistant United States Attorney responded by letter that his office believed that the manufacture and distribution of the "Guardfather" violated section 1241, but that plaintiffs would not be prosecuted if they ceased to manufacture and distribute the item.

The issue on this appeal is whether the device called "Guardfather" is prohibited by the Federal Act.

The Act states that:

The term "switchblade knife" means any knife having a blade which opens automatically—

(1) by hand pressure applied to a button or other device in the handle of the knife, or

(2) by operation of inertia, gravity, or both.

15 U.S.C.A. § 1241(b). Although the device here clearly satisfies both subsections (1) and (2) above, Bingham argues that the "Guardfather" is not a "knife having a blade," but is rather a scribe with a shaft not covered by the Act. The district court concluded, after extensive review of the legislative history and the rules and regulations promulgated under the Act, 19 C.F.R. 12.95 *et seq.*, that the "Guardfather" was within the legislative intent and scope of the Act.

In a prepared statement on the Senate floor upon passage of the Act, Senator Kefauver, one of the bill's sponsors, noted:

The article advertised is called Black Beauty. It is, reading from the ad, an Italian stiletto. Reading further, the advertisement states, "holding Black Beauty about 12 inches from object, press mystic button and flashing steel blade will open with the speed of sound."

. . . .

An examination of the knife revealed an object which could logically be used for only one purpose: *i.e.,* the inflicting of serious injury to another human being. It differs from some of the other switchblade knives in that it has no cutting edge, and hence does not serve even the purpose attributed to the normal pocket knife.

104 Cong. Rec. 15,709 (1958) (Statement of Sen. Kefauver). Senator Kefauver be-

lieved the Black Beauty to be covered by the Act.

Congressman Keating likewise believed the Act covered more than a knife with a cutting edge. In addressing the proposed bill in the House of Representatives, he stated:

> My only reservation at all about this measure is that it does not spell out, specifically, prohibitions on interstate commerce in stilettos. My bill did define these weapons and include them in the prohibition. Stilettos have no utilitarian purpose whatsoever. They have no cutting edge, only a sharp dangerous point.

> However, I believe that stilettos would fall under the definition of switchblade knives as set forth in H.R. 12850, so their dissemination should be effectively curbed under this measure.

104 Cong. Rec. 12,400 (1958).

The legislative history is thus clear that products such as the "Guardfather" were intended to be covered by the Act. The district court correctly held that the Switchblade Knife Act encompasses, as here presented, a product which has no cutting edge, only a sharp dangerous point which is housed in a handle and springs out of the handle and locks into place when a button or clip located on the handle is pressed.

Bingham raises several other issues on this appeal, but none merit discussion. The district court's grant of summary judgment is due to be

AFFIRMED.