**CROWLEY CUTLERY COMPANY,**
Plaintiff–Appellant,

v.

**UNITED STATES of America and Commissioner of Customs of the United States Customs Service, Defendants–Appellees.**

No. 87–2836.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1988.

Decided June 6, 1988.

Rehearing and Rehearing En Banc
Denied June 29, 1988.

Nathan Bey Myers, Chicago, Ill., for plaintiff-appellant.

Patrice Scully, U.S. Dept. of Customs, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr. and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

In this improbable suit, Crowley Cutlery Company asked a federal district court in Illinois for a declaration that the Switchblade Knife Act, 15 U.S.C. §§ 1241 *et seq.*, which forbids the importation of switchblade knives or their interstate transportation or distribution, violates the due process clause of the Fifth Amendment. The district judge dismissed the suit, and Crowley appeals.

The roots of the case are in Minnesota, where Douglas Nelson imported switchblades, in violation of the Act, and sold them from from his home, and also (unbeknownst to his employer) from an office at the department store where he worked. The U.S. Customs Service repeatedly seized shipments to him of switchblade knives. On October 10, 1986, Nelson incorporated Crowley Cutlery Company in Illinois. He is the sole stockholder and officer, and the company has as yet no assets and no employees and has conducted no business, but represents that it intends to import switchblade knives into Illinois. Twelve days after it was incorporated, Crowley filed this suit. While the suit was pending in the district court Nelson was indicted in a federal district court in Minnesota for criminal violations of the Switchblade Knife Act and other federal statutes. He was convicted (the court having rejected the same constitutional challenge to the Act that Crowley has mounted in the present suit), and shortly before the oral argument of this appeal was sentenced to a year in prison and fined $5,000. He was due to surrender on May 23 to begin serving his sentence, bail pending appeal to the Eighth Circuit having been denied. He intends to argue in that appeal that the Act is unconstitutional.

■ There is a serious question whether the present suit involves an actual controversy within the meaning of Article III of the Constitution. The timing of the incorporation of Crowley Cutlery Company, and its lack of staff or assets, create an inference—strongly reinforced by its counsel's insistence that Nelson might have formed a dozen one-man corporations in order to place his constitutional challenge to the Switchblade Knife Act before all of the regional federal courts of appeals—that this suit was brought not to enable Crowley to remove a legal impediment to conducting a business in imported switchblade knives in Illinois but to enable Nelson to litigate his constitutional challenge in another circuit besides the Eighth. Events since the filing of the suit augment our suspicions. For with Nelson about to enter prison, and his switchblade business strictly a one-man band, the prospects for his starting up a business in Illinois are dim whatever the outcome of the present suit. If all he is seeking by this suit is a precedent, the suit is not within the jurisdiction of the federal courts. *United States v. Articles of Drug,* 818 F.2d 569, 571, 574 (7th Cir.1987); see *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Yet when he brought this suit he could not be sure he would be convicted, and the conviction may, for all we know, be reversed on appeal, though not on the constitutional grounds advanced in this suit. And maybe he really did plan to relocate to Illinois if he won a favorable decision in this suit—though this is unlikely; in addition to our previous points we note that Illinois has its own statute forbidding the sale or possession of switchblade knives. Ill.Rev.Stat. ch. 38, ¶ 24–1(a)(1). If Nelson were serious about relocating his business from Minnesota he would doubtless have incorporated in one of the states that does not have such a law; such states, and his

major market, are in the South, not the Midwest.

■ Even if Nelson were deadly serious about relocating to Illinois if he wins this suit, intentions alone do not make a case or controversy in the constitutional sense. You cannot go to a federal court for advice on the legality of a proposed course of action. You must be party to an existing legal dispute. This is true whether you are seeking a declaratory judgment or any other form of relief; the declaratory-judgment statute cannot amend Article III. See, e.g., *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941–43 (7th Cir.1983). So we must ask whether Nelson (or his alter ego, Crowley) has a dispute with either the U.S. Customs Service or the United States Attorney for the Northern District of Illinois, or both.

■ If the federal authorities would pounce the minute Crowley started importing switchblade knives into the Port of Chicago, *and* if, but for fear of their claws, Crowley would indeed import switchblade knives forthwith into the Port of Chicago, there would be enough present adverseness between the parties to satisfy the requirements of Article III. See, e.g., *Steffel v. Thompson*, 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974); *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–303, 99 S.Ct. 2301, 2308–11, 60 L.Ed.2d 895 (1979); *Bingham, Ltd. v. Smith*, 774 F.2d 1069 (11th Cir.1985) (threat to prosecute under the Switchblade Knife Act). The first "if" is less dubious than the second. At argument the government's lawyer speculated that the Customs Service might not discover that Nelson was importing switchblade knives into Chicago and that even if it did and reported him to the U.S. Attorney the latter might, in the exercise of his prosecutorial discretion, decline to prosecute him. We are not impressed. It is after all one government, and a government that would look uncommonly silly if after having pursued Nelson pertinaciously in Minnesota it turned a blind eye to his relocating his criminal enterprise to Illinois.

■ Although there is enough question whether Crowley would begin a switchblade business in Illinois if it won the present suit to make us doubt the justiciability of this suit, cf. *United States v. Articles of Drug, supra*, 818 F.2d at 573–74, where a suit has a variety of jurisdictional infirmities there is no need to worry each to death if one is clearly fatal. The Supreme Court has frequently said that a suit which is frivolous does not invoke the jurisdiction of the federal courts. See, e.g., *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Oneida Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974); *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 1372 (1974); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70–72, 98 S.Ct. 2620, 2628–29, 57 L.Ed.2d 595 (1978). Although most of the Court's statements of the principle have been dicta rather than holdings, and the principle has been questioned, see, e.g., *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed. 2d 442 (1970); *Yazoo County Industrial Development Corp. v. Suthoff*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982) (Rehnquist, J., dissenting from denial of certiorari), it is an established principle of federal jurisdiction and "remains the federal rule." *Hagans v. Lavine, supra*, 415 U.S. at 538, 94 S.Ct. at 1379, see 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3564 (2d ed. 1984). It is the basis of a large number of lower-court decisions (cited in *id.*), and at this late date only the Supreme Court can change it.

■ We relied on the principle in two recent cases, *Dozier v. Loop College*, 776 F.2d 752 (7th Cir.1985), and *Cronson v. Clark*, 810 F.2d 662 (7th Cir.1987), and, with all respect to its distinguished critics, we think it is a sound principle. The most important difference between dismissing a case on the merits and dismissing it for lack of jurisdiction because it is frivolous is that the latter form of dismissal is possible, indeed mandatory, even if the defendant

fails to preserve the ground that demonstrates the suit's lack of merit. And that is an option that ought to be available to a court. There is, no doubt, the danger emphasized by Judge Friendly in *Fogel v. Chestnutt*, 668 F.2d 100, 105–07 (2d Cir. 1981), of confusing an absence of jurisdiction with an absence of a meritorious claim. The issue in that case was the existence of an implied right to sue for damages under the Investment Company Act, and the court held that this was an issue about the merits rather than about jurisdiction. We have no quarrel with that classification, any more than with the same classification of a similar issue (an implied right of damages under the Constitution) in *Bell v. Hood*. But these decisions do not hold or imply that a court must wrestle with difficult jurisdictional questions if, those questions surmounted, the case would have to be tossed out even if the defendant failed to put up an effective defense; this result is achieved by calling a dismissal for frivolousness jurisdictional too.

Against this position it can be argued that any claim which may be said to arise under the Constitution or a federal statute invokes the jurisdiction of the federal courts, where "jurisdiction" is viewed as marking off the judicial power of the United States from other sources of governmental authority. And whatever the grounds of the present suit, they are federal rather than state grounds. Many decisions hold, however, that the concept of "arising under" is not a matter merely of labels; consider for example *Andrews v. Louisiana & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), which held that a suit by a railroad worker for wrongful discharge under state law actually arose under the federal Railway Labor Act. *Andrews* is different from the present case; the idea behind it is that Congress wanted to keep the class of litigation represented by Andrews' suit out of the state courts. But, by the same token, the principle that frivolous suits do not invoke federal jurisdiction retards efforts by plaintiffs to recast what are really state-law claims as federal claims; the principle enables these claims to be dismissed at the earliest possible opportunity. It also spares the federal courts from having to entertain—merely because the defendant did not have the wit to point out the deficiencies in the plaintiff's case—litigation not reasonably grounded in federal law. A federal court should not be required to decide a dispute over an alleged fraud in the sale of bananas merely because the defendant fails to point out that bananas are not securities within the meaning of the Securities Exchange Act of 1934, or perhaps prefers to litigate his dispute with the plaintiff in federal court. An utterly groundless suit is not grounded in the ostensible source of the plaintiff's claim.

■ The entire issue, though fascinating to aficionados of federal jurisdiction, has limited practical importance now that three-judge district courts (convenable only if the plaintiff's federal claim was "substantial") have virtually been abolished (compare 28 U.S.C. § 2284(a) with 28 U.S.C. §§ 2281 and 2325 (1948 ed.) (repealed)), and now that district courts relinquish jurisdiction over pendent state claims whenever the federal claim drops out early, whether on jurisdictional or nonjurisdictional grounds. In *Bell v. Hood* the majority and dissenting Justices assumed that the consequence of dismissing the federal claim on the merits rather than for lack of jurisdiction would be to force the district court to adjudicate the pendent state-law claims; today, dismissal of the federal claim before trial normally requires the district court to relinquish jurisdiction over the pendent claims. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966); *Graf v. Elgin, Joliet & Eastern Ry.*, 790 F.2d 1341, 1344, 1347–48 (7th Cir.1986).

■ No one doubts the authority of a federal district judge to dismiss a frivolous suit on his own initiative, and whether he calls it a dismissal for failure to state a claim or a dismissal for lack of jurisdiction is a detail. However, if frivolous suits do not invoke federal jurisdiction, dismissal is mandatory. See Fed.R.Civ.P. 12(h)(3). So there is a small difference. Notice that plaintiffs will often be better off by this

mode of dismissal, which will deprive the judgment of res judicata or collateral estoppel effect so far as any related state-law claims may be concerned.

■■■■■ Is a suit frivolous, for purposes of determining the federal court's jurisdiction over it, if it is frivolous for purposes of awarding sanctions under Rule 11 of the civil rules (or other sources of judicial authority to punish the filing of frivolous pleadings), and vice versa? In deciding whether a claim is so insubstantial as not to invoke federal jurisdiction, the cases sometimes use language more emphatic than one encounters in modern Rule 11 cases, see, e.g., *Goosby v. Osser*, 409 U.S. 512, 518–19, 93 S.Ct. 854, 858–59, 35 L.Ed. 2d 36 (1973), though the differences may well be rhetorical, and the cases in question precede the 1983 amendment that made Rule 11 the scourge of frivolous filers that it is today. We incline to doubt that distinguishing the frivolous from the utterly frivolous is within the practical capacity of a court, but note that the concepts of frivolousness in the two contexts of jurisdiction and Rule 11 cannot be completely symmetrical, if only because jurisdiction is based on what the pleadings show while sanctions under Rule 11 may be imposed for a failure to conduct an adequate factual inquiry before filing suit. A suit that fails to invoke federal jurisdiction by reason of being frivolous must be frivolous on its face, that is, frivolous when the pleadings and other relevant materials setting forth the plaintiff's claims (for example, an answer to a motion to dismiss) are read against the relevant statutory or decisional background. See, e.g., *Ex parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) (per curiam). Rule 11 is not so cabined.

■■■■ The present suit is frivolous. Compare *Bingham, Ltd. v. Meese*, 817 F.2d 98 (11th Cir.1987) (per curiam), and *United States v. Murphree*, 783 F.2d 605 (6th Cir. 1986)—both cases summarily rejecting constitutional challenges to the Switchblade Knife Act. Crowley's principal argument is that the due process clause forbids an outright ban on the importation, sale, possession, or use of a good that (1) has some

proper uses and (2) is not inherently dangerous, though Crowley would apparently —and inconsistently—permit heavy taxation that might be prohibitory in its practical effects. A switchblade knife indeed satisfies both of Crowley's conditions—but so too, counsel acknowledged at argument, does a machine gun. In Crowley's view, the private possession of nuclear bombs, dynamite, and nitroglycerine can be banned because they are inherently dangerous, but a switchblade knife cannot be, because it can be used for every proper use that a regular knife can be used for; it is just a knife with a spring. Of course, explosives have legitimate uses too.

The other branch of Crowley's constitutional case is an argument that the distinction between a spring knife and a manual knife is too slight to be considered rational. (This sounds like an equal protection argument, but Crowley does not rely on the equal protection clause.) The spring enables the knife to be opened without taking off one's mittens or scratching the polish on one's long fingernails; it is not only useful, but benign.

■■■■■ These arguments do not come close to demonstrating the unconstitutionality of the Switchblade Knife Act. Switchblade knives are dangerous, and the due process clause does not forbid the banning of dangerous products. "Congress is free to exclude from interstate commerce articles whose use in the states for which they are destined it may reasonably conceive to be injurious to the public health, morals or welfare." *United States v. Carolene Products Co.*, 304 U.S. 144, 147, 58 S.Ct. 778, 781, 82 L.Ed. 1234 (1938). Switchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use. So it is rational to ban them, and not regular knives as well. It would be absurd to suggest that the only lawful method of banning switchblade knives would be to ban all knives, including we suppose the plastic knives provided on airlines and in prison cafeterias. Nevertheless that is Crowley's position.

All this is not to say that the issue of the Switchblade Knife Act's constitutionality necessarily is frivolous. It is the specific grounds articulated by Crowley that are frivolous, and make the suit frivolous.

 The district court followed an alternative route to dismissal. The federal declaratory-judgment statute empowers but does not require federal courts to issue declaratory judgments (provided there is an "actual controversy"), see 28 U.S.C. § 2201, and a long line of cases makes clear that the issuance of such a judgment is indeed discretionary. See, e.g., *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 747–49 (7th Cir.1987). The plaintiff in a declaratory-judgment action is not seeking immediate relief, and judges ought to be alert to the possibility that he may be trying to enlist them in a tactical maneuver undeserving of the expenditure of federal judicial resources. See *American Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939). That is an apt description of the present suit, the most plausible explanation of which is that Nelson, pessimistic about his prospects for persuading the federal courts in Minnesota to invalidate the Switchblade Knife Act, sought what he thought might be a more hospitable forum.

It is a hotly disputed question whether and to what extent a litigant should be able to litigate parallel claims in state and federal court simultaneously. Against is the desire to preserve the somewhat tattered remnants of state sovereignty in a federal system and conserve the limited resources of the federal courts; in favor is the sense that the federal courts are the primary protectors of federal rights (a modern view; Congress did not even confer a general federal-question jurisdiction on the federal courts until the Act of March 3, 1875, ch. 137, 18 Stat. 470). The case against has persuaded the Supreme Court to hold that a federal court may not (save in exceptional circumstances) enjoin a state-court prosecution, see *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); and in

a companion case to *Younger* the principle was applied to a request for declaratory relief. See *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 668 (1971). The order of the state and federal suits is not critical. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

 The analogy to Nelson's attempted end run around the United States Attorney in Minnesota should be plain. But we need not rely on analogy, for the question whether a litigant should be able to litigate the same issue at the same time in more than one federal court is an easy one—he should not be. For the application of this principle where one of the suits seeks declaratory relief, see *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Tempco Electric Heater Corp. v. Omega Engineering, Inc., supra*, 819 F.2d at 748–49; *National Health Federation v. Weinberger*, 518 F.2d 711 (7th Cir.1975); and for necessary qualification, see 10A Wright, Miller & Kane, Federal Practice and Procedure § 2758 (2d ed. 1983). The Judicial Panel on Multi-District Litigation (see 28 U.S.C. § 1407) symbolizes the principle of consolidating parallel federal lawsuits in one federal district court. The principle is an important one, and though in the present case the frivolousness of the plaintiff's declaratory suit has minimized the amount of judicial time necessary to decide it, the litigation of this declaratory-judgment action in the federal courts in Illinois, while the identical issue presented by that action is before the Eighth Circuit, is a waste of federal judicial resources. We reject the characterization by Crowley's counsel at argument of the Seventh and Eighth Circuits as "different countries."

 Since the only relief sought by Crowley was declaratory, the decision not to grant such relief required the district court to relinquish jurisdiction of the suit.

AFFIRMED.