Bryant LONG, Plaintiff,

v.

**CHICAGO TRANSIT AUTHORITY,**
Defendant.

No. 97 C 1062.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 11, 1997.

Mitchell B. Katten, Roseanne Loftus, O'Rourke & Griffin, Chicago, IL, for Plaintiff.

Kathleen Hope Herrmann, Glenn William Kaun, Chicago Transit Authority, Chicago, IL, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

ALESIA, District Judge.

Before the court is plaintiff Bryant Long's motion to amend the judgment and for leave to file a second amended complaint. For the reasons that follow, the court denies plaintiff's motion and dismisses his case with prejudice.

## I. BACKGROUND

This is the second memorandum opinion and order issued by the court concerning this case. The general factual background of the case is detailed in *Long v. Chicago Transit Authority*, 979 F.Supp. 1214, 1215–17 (N.D.Ill.1997). Summarized below is the procedural background of this case.

On February 12, 1996, plaintiff Bryant Long ("Long"), who had both of his feet partially amputated as a child, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Proposed 2d Am. Compl. (hereinafter "2d Am. Compl.") Ex. A.) In that charge, Long alleged that he had "applied for a position of Bus Operator" with the Chicago Transit Authority ("CTA") and that "[o]n or about December 18, 1995," the CTA rejected him because he was "disabled and unable to do the job." (*Id.*)

After receiving notice of his right to sue, Long filed suit in this court, alleging that the CTA had violated the Americans with Disabilities Act ("ADA") by refusing to hire him as a bus driver solely on the basis of his disability. The CTA filed a motion to dismiss, arguing that Long was not "qualified" to be a CTA bus driver, as defined by the ADA and the ADA case law, because Long had failed to submit a United States Department of Transportation ("DOT") waiver to the CTA as required by federal and Illinois laws and regulations.

In response to the CTA's motion to dismiss, Long filed an amended complaint. In his amended complaint, Long admitted that he had not obtained the requisite waiver from DOT. He alleged, however, that he was not able to obtain such a waiver because the CTA refused to join in his application for the waiver. The CTA filed a motion to dismiss Long's amended complaint. The CTA argued that it had no legal obligation to join in the application for waiver, that federal regulations provide that Long could have obtained the waiver unilaterally, and that it was Long's obligation, not the CTA's, to obtain the requisite waiver.

On October 21, 1997, while the CTA's motion to dismiss was pending, Long filed a motion to inform the court that DOT had granted him a "training" waiver in September, 1997. The training waiver allowed Long to participate in the CTA's training program. Long claimed that DOT would not issue him a "regular" waiver because he had never driven a commercial vehicle. As the CTA never joined in his application, Long obtained the waiver unilaterally.

On October 27, 1997, the court granted the CTA's motion to dismiss Long's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiff was not a "qualified individual with a disability" as defined by the ADA, case law, and federal and Illinois laws and regulations. *Long*, 979 F.Supp. at 1216–17. The court explained that to determine whether Long was qualified to be a CTA bus driver, the court must first determine whether Long "satisfie[d] the prerequisites for the position." *Id.* at 1216 (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996)). The court determined that a prerequisite for a partial amputee applying for the position of CTA bus driver is that the individual must have obtained a DOT waiver prior to being hired. *Id.* at 1216; *see* 625 ILCS §§ 5/18b–101 to 111; 49 C.F.R. §§ 391.41, 391.49; ILL. ADMIN. CODE tit. 92, § 391 .2000 (West 1997). Such a waiver can be obtained by the individual unilaterally, 49 C.F.R. § 391.49, and neither the parties cited nor could the court find any law which imposed a duty upon the CTA to join in the application for the DOT waiver.

The court then determined that because Long had not obtained the requisite DOT waiver at the time that the CTA allegedly refused to hire him, Long was not "qualified" to be hired by the CTA as a bus driver. *Long*, 979 F.Supp. at 1216–17. The court further explained that because the only position for which Long had alleged that he had applied was that of bus driver, the CTA was under *no obligation to hire him in another position. Id.* at 1217. Finally, the court explained to Long that his having obtained a "training" waiver in September of 1997 did not affect the court's opinion because "[the] determination of whether an individual is a 'qualified individual with a disability' must be

made at the time of the employment decision." *Id.* (citing *Bombard,* 92 F.3d at 563).

After the court issued its opinion, Long withdrew his motion for leave to file a second amended complaint. Then, on November 10, 1997, Long filed a motion to amend the judgment and for leave to file a second amended complaint (hereinafter "Long's motion to amend"). Long's proposed second amended complaint seeks to add to the first amended complaint allegations that (1) DOT issued Long a training waiver in September of 1997; (2) Long "offered to work" in non-driving positions while his employment application was under review; and (3) the CTA's refusal to hire Long has been continuing since December of 1995 until present. The second amended complaint also requests the court to issue a declaratory judgment in this action.

On December 9, 1997, the parties appeared before the court on Long's motion to amend. At that time, Long's attorney represented that Long have never formally applied to the CTA for any position other than bus driver; rather, Long's alleged "offer to work" had merely been made in oral conversations with CTA employees. The CTA's attorney confirmed that Long had never applied for any position other than that of bus driver.

## II. DISCUSSION

### A. *Plaintiff's motion to amend the judgment*

Long first moves the court to amend "the Judgment entered on October 27, 1997." Long, however, misunderstands the court's October 27, 1997 decision. In that decision, the court dismissed Long's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court neither dismissed his case with prejudice nor entered a final judgment in the case. *See Paganis v. Blonstein,* 3 F.3d 1067, 1070 (7th Cir.1993). Accordingly, the court denies as moot Long's motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 784 (7th Cir.1994); *In re Nuveen*

*Fund Litig.,* 94 C 360, 1994 WL 505293, at *1–2 (N.D.Ill. Sept.15, 1994).

### B. *Plaintiff's motion for leave to file a second amended complaint*

Long has also requested leave to file a second amended complaint. Long's second amended complaint differs from his first amended complaint in that the second contains allegations that (1) DOT issued Long a training waiver in September of 1997; (2) Long offered to work in non-driving positions while his employment application was under review; and (3) the CTA's refusal to hire plaintiff has continued from December of 1995 until the present. The second amended complaint also seeks a declaratory judgment.

 In order for Long to amend his complaint a second time, Long must obtain the court's leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 15(a). Rule 15(a) provides that "leave shall be freely given when justice so requires." *Id.* However, there are limits on the liberality of Rule 15(a). *Bower v.. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992). The court can deny leave to amend "where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile." *Id.* One way in which an amendment might be futile is if the amended complaint could not withstand a motion to dismiss. *Id.*

#### 1. The training waiver issued in September of 1997

 The first allegation which Long seeks to add to his second amended complaint is that DOT issued him a training waiver in September of 1997.[1] The fact that Long received a training waiver in September of 1997, however, does nothing to affect this court's previous determination that Long was not a "qualified individual with a disability" on or before December 18, 1995, the date on which the CTA allegedly refused to hire him as a bus driver. *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524 (7th Cir.1996);

---

**1.** The parties dispute whether Long's waiver is the waiver required by federal and Illinois laws and regulations. However, because that issue is

irrelevant to the court's decision on Long's motion to amend, the court makes no determination with respect to that issue.

*Bombard,* 92 F.3d at 563. The fact that he obtained the waiver in September of 1997 cannot somehow relate back to December 18, 1995 to make him "qualified" on that date.

Long's complaint establishes that Long was not qualified to be a CTA bus driver on December 18, 1995 because he had neither applied for nor obtained the requisite DOT waiver prior to filing his EEOC charge or this lawsuit. 625 ILCS §§ 5/18b–101 to 111; 49 C.F.R. §§ 391.41, 391.49; ILL. ADMIN. CODE tit. 92, § 391.2000 (West 1997); *see also Bombard,* 92 F.3d at 563 (explaining that to determine whether an ADA plaintiff is a "qualified individual with a disability," the court must first determine whether Long the plaintiff "satisfies the prerequisites for the position"). Consequently, because he was not "qualified" on or before December 18, 1995, Long cannot maintain an ADA claim based on the CTA's refusal to hire him as a bus driver on that date. *See Sieberns v. Wal–Mart Stores, Inc.,* 125 F.3d 1019, 1022 (7th Cir.1997).

### 2. Long's EEOC charge

Long also seeks to add claims that (1) after learning of the waiver requirement, Long offered to work in a non-driving position and the CTA refused to hire him for such a position based on his disability and (2) the CTA's refusal to hire Long for either a driving or non-driving position continues until the present date. Neither of these claims, however, was included in Long's EEOC charge.

■ The general rule is that Long may not bring claims under the ADA that were not included in the charges made to the EEOC. *Harper v. Godfrey Co.,* 45 F.3d 143 (7th Cir.1995); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 544 (7th Cir.1988). This rule serves two purposes. *Cheek v. Western & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). First, the rule affords "the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Id.* Second, the rule ensures that the employer is given notice of the conduct which the claimant claims is discriminatory. *Id.*

■ There is an exception, however, to the above rule. An ADA plaintiff may bring a claim that was not included in his EEOC charge if the claim passes the two-prong test set out in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc). *Harper,* 45 F.3d at 148. The first requirement of the *Jenkins* test is that the claim must be "like or reasonably related" to the allegations in the EEOC charge. *Id.* Claims are not alike or reasonably related unless there is a reasonable factual relationship between the two. *Id.* "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Id.* (quoting *Cheek,* 31 F.3d at 501) (emphasis in original). The time period involved in the two claims is also a relevant factor. *Id.; Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989). The second requirement of the *Jenkins* test is that the claim in the complaint "reasonably could develop from the EEOC investigation into the original charges." *Id.*

■ Long's second amended complaint attempts to bring a claim for the CTA's alleged refusal to hire Long for a non-driving position. This claim does not pass the two-prong test of *Jenkins.* In his charge, Long specifically claims that the CTA discriminated against him by refusing to hire him as a bus driver, a position for which he applied. He never even alluded to the alleged fact that he "offered to work" in non-driving positions. The allegation that a partial amputee was not hired as a bus driver is very different than the allegation that he was not hired in any position because of his disability. Even under the liberal standard of pleading applied to claims made in an EEOC charge, the differences between the charge and the complaint cannot be overlooked. *See Cheek,* 31 F.3d at 502.

Further, the court cannot say that Long's claim that the CTA refused to hire him in non-driving positions could "reasonably" develop from the EEOC's investigation into the charge. The only conduct of which Long complains in his EEOC charge is that the CTA allegedly refused to hire him as a bus driver. There is not even a hint that Long

believed he was discriminated against because he "offered" to work in any position and the CTA failed to hire him for such position. Not only was this claim not mentioned in his EEOC charge, it was never mentioned in either his original or first amended complaint. Further, as Long's attorney admitted in open court, the "offer" was only made in oral conversations; Long never submitted an application for any position other than bus driver. In investigating this charge, the EEOC easily could have never discovered that Long allegedly offered in oral conversations with a CTA employee to work in non-driving positions.

Allowing Long to base his cause of action on this alleged refusal to hire would frustrate the purposes behind the rule that an ADA plaintiff can only bring claims that were included in his EEOC charge. From the EEOC charge, the CTA would never have been put on notice that Long offered to work in non-driving positions and that he was not hired for such positions. Further, the EEOC and the CTA might have worked harder at conciliation if they were aware that the claim was that a partial amputee was not hired by the CTA in any position. Accordingly, the court finds that the claim that the CTA refused to hire Long for a non-driving position does not pass the *Jenkins* two-prong test. Long is precluded from bringing this claim in his complaint.

Long's second amend complaint also attempts to bring a claim for the CTA's alleged continuing refusal to hire him for either a driving or non-driving position from December of 1995 until the present time. As explained above, however, Long cannot bring a claim based on the CTA's refusal to hire Long for a non-driving position because that claim does not pass the two-prong test of *Jenkins*. The fact that Long also alleges that the CTA still refuses to hire him does not change the court's analysis. Long cannot bring a claim based on the CTA's refusal to hire him in a non-driving position for which he orally offered to work, whether that refusal was made before, on, or any day subsequent to December 18, 1995.

Long also cannot bring a claim based on the CTA's continuing refusal to hire him as a bus driver because that claim also does not pass the two-part test of *Jenkins*. First, the claims are not factually related. As discussed above, Long was not protected by the ADA until September of 1997 when he obtained the training waiver; therefore, any refusal on the CTA's part to hire Long as a bus driver is not actionable under the ADA. Thus, the claims with which Long is left is Long's claim in his EEOC charge that the CTA refused to hire him on December 15, 1995 and the claim in Long's second amended complaint that the CTA has refused to hire Long from September of 1997 to the present date. These claims are too remote in time to be factually related.

Moreover, Long's claim that the CTA continued to discriminate against him after he received the training waiver in September of 1997 could not have developed from the EEOC's investigation into the original charge. Long's right-to-sue letter is dated November 12, 1996. (2d Am.Compl.Ex. B.). Any possibility of the EEOC investigating the original charge was long over by the time that Long received the training waiver. Further, Long's claim is not like a retaliation claim where a second filing might be excused where it would serve no purpose except to create procedural technicalities. *Steffen*, 859 F.2d at 545. Therefore, Long's claim that the CTA refused to hire him after he received the training waiver in September of 1997 could not have developed from the EEOC investigation into the original charge. Accordingly, Long cannot include that claim in his complaint.

In this case, Long and his attorney are attempting to patch up the procedural mistakes made with regard to the filing of Long's complaint. Long should have obtained the waiver prior to filing his charge of discrimination with the EEOC and prior to filing this lawsuit. The federal regulations provide that Long could have obtained the waiver unilaterally. This Long failed to do. Long cannot now be heard to complain of the CTA's failure to hire him in non-driving positions when, as is apparent from his EEOC charge, Long never brought such claims before the EEOC. Further, Long cannot reasonably argue that the CTA's alleged refusal

to hire him as a bus driver after he obtained the waiver in 1997 somehow was included in his 1995 EEOC charge.

### 3. Long's request for a declaratory judgment

Long's second amended complaint has also added a second count that seeks a declaratory judgment. In Count II, Long requests the court to enter an order declaring that (1) DOT has the statutory authority to award a training waiver; (2) Long may participate in the CTA's program by virtue of his receipt of the training waiver; and (3) the CTA's continuing refusal to employ Long violates the ADA.

A federal district court is empowered to issue a declaratory judgment, provided that there is an actual controversy and the court has subject matter jurisdiction. *See Crowley Cutlery Co. v. United States,* 849 F.2d 273, 279 (7th Cir.1988). It is well settled, however, that a federal district court has the "discretion to decline to hear a declaratory judgment action, even though it is within [its] jurisdiction." *Id.* at 279; *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 747 (7th Cir.1987) (citations omitted). Further, because the plaintiff in a declaratory-judgment action is not seeking immediate relief, "[federal] judges ought to be alert to the possibility that [the plaintiff] may be trying to enlist them in a tactical maneuver undeserving of the expenditure of federal judicial resources." *Crowley,* 849 F.2d at 279 (citing *American Auto. Ins. Co. v. Freundt,* 103 F.2d 613, 617 (7th Cir.1939)).

In this case, the court declines to hear Long's declaratory judgment action. As is apparent from his request, what Long is attempting to do is make an end run around the requirements that an ADA plaintiff file a charge with the EEOC and receive a right to sue letter before filing an action in federal court. The court refuses to be a pawn in such a tactical maneuver.

Once Long obtained the requisite waiver from DOT, Long should have reapplied at the CTA. Further, Long should have submitted an application for a non-driving position if he in truth sought such a position. If the CTA still refused to hire him, Long then should have filed a charge of discrimination with the EEOC, affording the EEOC and the CTA a chance to resolve the matter before suit was filed in federal court. Long cannot attempt to couch his claim of discrimination in terms of a request for a declaratory judgment in order to avoid the conditions precedent to his bringing his ADA claim in federal court.

In sum, the added allegations and claims of the second amended complaint do nothing to cure the deficiencies of the first amended complaint. To the extent that the second amended complaint attempts to state new claims, those claims are barred because Long has failed to file an EEOC charge based on those claims and those claims do not pass the two-prong test of *Jenkins.* Further, the court declines to hear Long's declaratory judgment action. Accordingly, the court denies Long's motion for leave to file a second amended complaint because the proposed amendments are futile.

### III. CONCLUSION

For the foregoing reasons, the court denies plaintiff Bryant Long's motion to amend the judgment and for leave to file a second amended complaint. Further, because Long was not qualified to be a CTA bus driver on the date of the adverse employment decision and because any claim that the CTA did not hire him for a non-driving position was not included in his EEOC charge, the court finds that Long will never be able to state an ADA claim against the CTA for its alleged refusal to hire plaintiff on or before December 15, 1995. Accordingly, the court dismisses Long's claim with respect to the CTA's conduct on or before December 15, 1995 with prejudice.