William C. HARRIS, Commissioner of Banks and Trust Companies of the State of Illinois, Plaintiff–Appellee,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM and Federal Reserve Bank of Chicago, Defendants,

and

House Committee on Banking, Finance and Urban Affairs, Intervening Defendant–Appellant.

Nos. 90–3824, 91–1048.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1991.

Decided July 25, 1991.

Rosalyn B. Kaplan, Roger Flahaven, Asst. Attys. Gen., Chicago, Ill., Nancy K. Needles, Asst. U.S. Atty. Civ. Div., Appellate Section, Chicago, Ill., Howard S. Scher, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for plaintiff-appellee and defendants-appellees.

Thomas K. McQueen, Jenner & Block, Chicago, Steven R. Ross, Charles Tiefer, Janina Jaruzelski, U.S. House of Representatives, Washington, D.C., for defendant-appellant.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Last fall, the House Banking Committee began an investigation of Banca Nazionale del Lavoro, a foreign bank that has a branch in Atlanta. The Committee suspected the Atlanta branch of having fur-

tively and without proper authorization lent billions of dollars to Iraq. The 101st Congress adjourned *sine die* on October 28, but the Committee continued its investigation and in November and December issued subpoenas to the Federal Reserve Board, seeking among other things reports of examinations of the bank that had been conducted by the Illinois Banking Commissioner. The Board has an agreement with the Illinois Commissioner to keep the reports that he submits to it confidential. Shortly after the first subpoena was served, the Commissioner filed suit in federal district court in Chicago, seeking an injunction that would both forbid the Board to turn over any of his documents to the House Committee and direct the Board to return the documents to him. On December 28, the district judge, finding that the subpoenas were invalid because issued after the expiration of the 101st Congress, granted the injunction. 751 F.Supp. 1323 (N.D.Ill.1991).

The documents were promptly returned to the Commissioner at his office in Illinois, where they remain. The House Committee, having been allowed to intervene in the district court proceeding because (in the judge's words) it "had asserted a legitimate legislative interest in the documents" that was sufficient to justify intervention under Rule 24, filed a notice of appeal and asked us to accelerate the briefing and argument of the appeal, which we did. The Committee has not attempted to subpoena the documents from the Illinois Banking Commissioner, though at argument the Commissioner's counsel told us the Commissioner would be "delighted" to receive such a subpoena and happy to comply with it provided that suitable arrangements were made for keeping the confidential portions of the documents confidential. Instead of so proceeding, the House Banking Committee has, since the convening of the new Congress in January, reissued the subpoenas to the Federal Reserve Board, though with what purpose is obscure since the Board no longer has the documents.

■ The case became moot when, following the issuance of the injunction, the Federal Reserve Board returned the documents to the Illinois Banking Commissioner. Mootness can kill a lawsuit at any stage. *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974). It kills it at the appellate stage if, as a result of developments since the judgment in the trial court, the relief sought by the appellant would, if granted, confer no tangible benefit on him, as in *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975), and *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (per curiam). All that the appellant in this case, the House Banking Committee, is asking us to do is to dissolve the injunction granted by the district judge. If we do, nothing will change. The documents that the Committee sought by subpoenaing the Federal Reserve Board will still be in Illinois, in the hands of the Illinois Banking Commissioner, not in Washington, in the hands of the Federal Reserve Board. Dissolving the injunction will reinstate the subpoenas against the Board (uselessly, since the Committee has issued fresh subpoenas), but the Board cannot produce documents that it does not possess.

If the House Committee had wanted to prevent the appeal from becoming moot, it should have asked Judge Duff, and, if he refused, us, to stay his order directing the Board to return the documents to Illinois. Fed.R.Civ.P. 62; Fed.R.App.P. 8. The Committee failed to seek such relief. Its briefs in this court talk a lot about "restoring the status quo," meaning the situation that prevailed before the judge issued the injunction and the documents were returned to Illinois, but do not explicitly ask us to order the state to return the documents to the Federal Reserve Board. It's a little much to ask us to infer, from the muddy request that "the injunction ... be vacated, and the district court instructed to restore the status quo ante and to dismiss the complaint," that the Committee wants not only the injunction and the suit dismissed but the Commissioner ordered to return the documents to the Board—especially since in its reply brief the Committee stated that "restoration of the status quo involves no mandatory assistance at all."

That looks like a disclaimer of any request for an order that the documents be returned.

Nor has the Committee proposed any legal basis for such an order. As far as we know, the Federal Reserve Board has no authority to require the Illinois Banking Commissioner to submit to it reports that he has made of his examinations of foreign banks. 12 U.S.C. § 3105(b)(1). But maybe the Banking Code is the wrong place to be looking for the legal basis for an order that would keep this case alive. After all, if a defendant who has notice of an injunctive proceeding goes ahead and completes the act sought to be enjoined, the court has inherent power to make him undo it. *Porter v. Lee*, 328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed. 1199 (1946); *Paris v. Department of Housing & Urban Development*, 713 F.2d 1341, 1344–45 (7th Cir. 1983). But that is not this case, since in returning the documents to the Illinois Banking Commissioner the Federal Reserve Board was not trying to beat the entry of an injunction. Quite the contrary. It was bowing to Judge Duff's injunction, which had a mandatory ("return the documents to the Illinois Banking Commissioner") as well as a prohibitory ("don't turn them over to the Committee") component. Since the Board was obeying, not defying, the injunction, the House Committee's remedy was to seek a stay of the injunction.

If the Board had turned over the documents to the House Committee before the Illinois Banking Commissioner had obtained his injunction, but with notice that he was seeking one, this case would be like *Porter* and *Paris*, or like the cases, illustrated by *EPA v. Alyeska Pipeline Service Co.*, 836 F.2d 443, 445 (9th Cir.1988), in which compliance with a subpoena is held not to moot a challenge to it because the court can order the defendant to return the documents. This is the converse case, in which a judicial order will moot a case unless the defendant obtains a stay, and the defendant fails to do so—in this case, fails even to attempt to do so.

We need not explore the outer boundaries of judicial power to "restore the status quo," whatever exactly that means. Maybe, since the Illinois Banking Commissioner is a party, we could, invoking our power under the All Writs Act, 28 U.S.C. § 1651(a), order it to return the documents to the Federal Reserve Board so that if the injunction is dissolved the House Committee will be able to obtain the documents from the Board by virtue of the subpoenas. Or maybe not, since the Commissioner is, after all, the rightful owner of the documents, and since the House Committee had its chance to prevent this case from becoming moot by asking the district court for a stay and failed without justification or excuse to do so. Whatever our power in the circumstances, the House Committee has not made an intelligible request that we exercise it.

Moreover, the Illinois Banking Commissioner appears to be perfectly willing to turn over the documents to the House Banking Committee upon suitable conditions to preserve their confidentiality. Having promised to preserve their confidentiality, the Committee can obtain the documents it wants without a judicial order, since the injunction that Judge Duff issued does not forbid the Illinois Banking Commissioner to turn over the documents in question to the House Committee. We are naturally reluctant to issue a mandatory injunction against a state official when the party in whose favor the injunction would run has (1) not made a clear request for such relief and (2) can gain his objectives without such relief.

If, then, all that the Committee will be heard to request is a dissolution of Judge's Duff's injunction forbidding the Federal Reserve Board to hand over to the Committee documents that the Board no longer has, the case is thoroughly moot. And it is not a case susceptible of repetition but avoiding review, such as a challenge by a pregnant woman to a statute that forbids her to have an abortion. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). The woman's suit will not be resolved before either she has the abortion or it is too late for her to have it, and yet she may find herself in the same position again—pregnant, wanting an abortion, and

challenging the statute that forbids her to get it. Without the special doctrine to which we have alluded, her efforts to challenge the statute would have the form and futility of Sisyphus's labors. However, since the documents at issue in this case are no longer in the Federal Reserve Board's possession and there is no suggestion that a similar set someday will be, a suit to pry them loose from that possession—a reprise of the present suit—is not in the cards. The special doctrine is therefore inapplicable, because it is confined to cases likely to recur *between the same parties. Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam); *United States v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987). It is this possibility of the recurrence of the identical controversy that gives the plaintiff enough prospect of tangible gain from the present suit (for example, as a result of the operation of res judicata or collateral estoppel) to satisfy the undemanding standard of Article III. *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1242 (7th Cir.1991). And anyway this case avoided review only because the Committee failed to ask for a stay of the district court's order requiring the Board to return the documents to the Illinois Commissioner. The Committee should not expect a reward for dropping the ball. It should not be permitted to manufacture jurisdiction.

■ The only possible reason the House Banking Committee could have for continuing to pursue this thoroughly moot case is concern with the precedent established by the district court's ruling, a concern that mootness does not abate. For although it is customary when a case becomes moot on appeal for the appellate court to order all previous orders in the case vacated, *United States v. Articles of Drug Consisting of 203 Paper Bags, supra,* 818 F.2d at 570; see also *Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam); *United States v. Munsingwear,* 340 U.S. 36, 40–41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950), the only effect of the vacatur is to deprive those orders of any preclusive effect in subsequent litiga-

tion. It does not deprive them of such stare decisis effect as they may have, *United States v. Articles of Drug Consisting of 203 Paper Bags, supra,* 818 F.2d at 572, modest—negligible, really—though such effect is in the case of an order by a district court. *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir.1987); *Jackson v. Johns,* 714 F.Supp. 1126, 1130 (D.Colo. 1989). Especially an unreviewable order by a district court. *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 875 (7th Cir.1987).

Nevertheless we can understand the Committee's concern. The district judge's order rather surprisingly denies the right of Congress to conduct business through its committees after it adjourns, even though all "adjournment" means is that the Congress is in recess; the Congress doesn't end until the congressional term expires. U.S. Const., Amend. XX, § 1; cf. 2 U.S.C. § 194; *United States v. American Tel. & Tel. Co.,* 551 F.2d 384, 390 (D.C.Cir.1976). For the 101st Congress, this was not until January 3, 1991, which was after the subpoenas were issued. It was also a surprise that the judge gave as much weight as he did to the confidentiality agreement between the Federal Reserve Board and the Illinois Banking Commissioner. The rights of a party to obtain documents under judicial process are not enjoyed at the sufferance of third parties who have agreed between themselves to keep documents secret. Cf. Fed.R.Civ.P. 34; *Societe Internationale v. Rogers,* 357 U.S. 197, 204–06, 78 S.Ct. 1087, 1091–93, 2 L.Ed.2d 1255 (1958); *Petkas v. Staats,* 501 F.2d 887, 889–90 (D.C.Cir.1974); *Denny v. Carey,* 78 F.R.D. 370, 373 (E.D.Pa.1978). The source of any such privilege must lie elsewhere, and the state has been hard-pressed to identify the elsewhere. The documents are, as the judge said, the "property" of the state, but all the Committee wants is copies. The interest asserted by the state is not an interest in property but an interest in privacy—which, so far as appears, the Committee is fully prepared to accommodate. The judge made much of the sovereign character of the State of Illinois, but neglected to

note that the right of Congress to use compulsory process in aid of its investigations also enjoys a certain dignity within our governmental system. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 508–11, 95 S.Ct. 1813, 1823–25, 44 L.Ed.2d 324 (1975); cf. *Exxon Corp. v. FTC,* 589 F.2d 582, 588–89 (D.C.Cir.1978); but see *United States v. American Tel. & Tel. Co.,* 567 F.2d 121, 129–30 (D.C.App. 1977).

We offer these remarks not in order to resolve the merits of a case over which we have no jurisdiction because the case has become moot, but to make clear that the district judge's rulings that so disturb the House Banking Committee should not be considered authoritative statements of the law of the circuit. *Colby v. J.C. Penney Co., supra,* 811 F.2d at 1123–24.

■ The remaining question is whether we should follow the course customary in cases that become moot on appeal and vacate the previous orders in the case, to preclude unappealable orders from having any possible preclusive effect in other litigation. It is a question because there is an exception to the general rule for cases in which the losing party, fearful of having its loss confirmed by the appellate court, abandons the appeal and then moves to have the trial court's judgment vacated as moot, thus "retiring to lick its wounds, fully intending to come out fighting again." *Commodity Futures Trading Comm'n v. Board of Trade,* 701 F.2d 653, 656 (7th Cir.1983). See also *In re Memorial Hospital,* 862 F.2d 1299, 1301 (7th Cir.1988); *United States v. Garde,* 848 F.2d 1307 (D.C.Cir.1988) (per curiam); *In re United States,* 927 F.2d 626 (D.C.Cir.1991). The rule is for the protection of the party who is thwarted of his desire for an appeal. For the same reason there is also an exception for the case in which the parties settle the case, so that neither party has been thwarted in his desire to appeal. *In re Memorial Hospital, supra.*

Far from asking us to vacate the case as moot, the House Banking Committee argues with great vigor that the case is *not* moot, and urges us in the strongest possible terms to decide the merits. *Northwest Pipeline Corp. v. FERC,* 863 F.2d 73, 79 n. 9 (D.C.Cir.1988). Could this be a facade, the Committee having decided because it was pessimistic about its chances of winning in this court to abandon the case by not seeking a stay of the district court's order, knowing that whatever the Committee told us we would declare the case moot and vacate the injunction? This we very much doubt, quite apart from our reluctance to impute such Machiavellian scheming to a coordinate branch of government. *Clarke v. United States,* 915 F.2d 699, 708 (D.C.Cir.1990) (en banc).

There is still another exception to the vacatur rule: we are not required to dismiss the previous orders if no party requests us to do so. *United States v. Munsingwear,* 340 U.S. 36, 40–41, 71 S.Ct. 104, 107–108, 95 L.Ed. 36 (1950); *Gjertsen v. Board of Election Commissioners,* 751 F.2d 199, 203 (7th Cir.1984). The Federal Reserve Board, against which the district judge's orders run, would ordinarily be the party to request vacatur, but it has not done so. That's no surprise; the Board is really just a stakeholder in this litigation—or rather a former stakeholder, the documents that are the stakes in the case having left its possession. The real loser is the House Banking Committee, which has requested us to vacate the orders. We will oblige, having exonerated the Committee of any charge that it tried to moot the appeal, wanting to obtain a vacatur.

The appeal is dismissed as moot, with directions to vacate all orders in the district court, and the suit itself.

DISMISSED, WITH DIRECTIONS.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court and that part of the principal opinion that holds that the case is moot. I also agree that we should follow the course customary in cases that become moot on appeal and vacate the previous orders in the case. Having taken this action, the court ought to refrain from discussing the merits in even a tentative fashion. Given our action in declaring the case moot and in vacating the

orders of the district court, it is quite clear that the opinion of the district court does not represent the law of the circuit. Likewise, it ought to be clear that the dicta of this court, in a case over which it has no jurisdiction, does not constitute the law of the circuit.