Dale and Barbara DARDEAU, Individually and as Next Friends for Hayley Dardeau, a Minor

v.

WEST ORANGE–GROVE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Donald Jeffries, Individually and in his Official Capacity as Superintendent of the Orange–Grove Consolidated Independent School District, and Joy Holland, Individually.

No. 1:98–CV–1675.

United States District Court,
E.D. Texas,
Beaumont Division.

March 29, 1999.

Laurence Wade Watts, Watts & Associates, Houston, TX, for Dale Dardeau, Individually & as Next Friend for plaintiffs.

Paul William Hunn, Walsh Anderson et al, Austin, TX, for defendants.

### MEMORANDUM OPINION ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND OVERRULING PLAINTIFF'S OBJECTIONS

HEARTFIELD, District Judge.

Pending is plaintiffs' motion to remand. Pursuant to 28 U.S.C. § 636(b), this motion was referred to United States Magistrate Judge Earl S. Hines for conclusions

of law and recommendation for disposition. On February 19, 1999, the magistrate judge issued a report recommending that plaintiffs' motion to remand be granted. The magistrate judge concluded that the court lacked subject matter jurisdiction to decide the instant suit.

The court has received and considered the Report and Recommendation of the United States Magistrate Judge, along with the record in this matter. Defendants timely filed objections to this report on March 5, 1999. This requires a *de novo* review of the specific portions of the report to which objections have been made. *See* FED.R.CIV.P. 72(b).

## I. OBJECTIONS

First, defendants object to the four reasons advanced by the magistrate judge for concluding that plaintiffs' pleadings, in light of the well-pleaded complaint doctrine, do not invoke federal question jurisdiction. The magistrate judge recited the following reasons for his conclusion: (1) the lack of an express reference to the U.S. Constitution in the original petition; (2) the lack of an express reference to 42 U.S.C. § 1983 in the original petition; (3) inclusion of an express citation to the Texas Constitution in the original petition; and (4) plaintiff's current assurances, as masters of their complaint that they did not use the term "due process" in their original petition to allege a federal constitutional claim. Defendants contend that none of the four factors support remand of the instant suit.

Next, the defendants object to the magistrate judge's application of the artful pleading doctrine to the instant controversy. Defendants state that the artful pleading doctrine is inapplicable to the instant case because the doctrine applies only where a federal cause of action completely preempts a state cause of action.

## II. DISCUSSION

### A. Defendants' Objections under the Well–Pleaded–Complaint Doctrine

As to the first three reasons provided by the magistrate judge in concluding that plaintiffs did not invoke federal question jurisdiction, defendants contend that plaintiffs' failure to make reference in their original petition to the United States Constitution or 42 U.S.C. § 1983, coupled with their inclusion of an express reference to the Texas Constitution are insufficient reasons to support remand.

In support of their argument, defendants assert that Texas pleading rules only require a "short statement of the cause of action sufficient to give fair notice of the claim involved." TEX.R.CIV.P. 47. Quoting *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993), defendants state that "[a] court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated." *Id.*

However, as noted by the magistrate judge, federal law directs that the party who brings the suit is master of what law is invoked. *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913). The well-pleaded-complaint doctrine provides that federal question jurisdiction exists only when "there appears on the face of the complaint some substantial, disputed question of federal law." *See Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir.1995). Further, because federal courts generally construe removal statutes strictly to prevent encroachment on state courts' jurisdiction, the burden is on the removing party to establish jurisdiction and suitability for removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

Here, plaintiffs' lack of express reference to the United States Constitution or section 1983 in their state petition creates considerable doubt as to whether plaintiffs asserted a federal cause of action. Well-pleaded-complaint jurisprudence does not, as defendants suggest, allow for removal on the basis of inferences drawn

from what is specifically stated in the state court petition. *See Carpenter,* 44 F.3d at 366. If, as in the instant suit, plaintiff chooses not to assert a federal claim, then the defendant cannot remove to federal court based on the mere possibility that a federal claim was asserted. *See id.*

■■ If plaintiffs, in their petition, are disguising a federal claim under the guise of state law, defendants will not be prejudiced. Title 28 U.S.C. § 1446(b) imposes no time limit on removal of federal question cases. They may be removed at any time prior to entry of judgment within 30 days of a defendant's receipt of an order, filing, or other paper from which *it may first be ascertained that the case is or has become removable. FDIC v. Taylor,* 727 F.Supp. 326 (S.D.Tex.1989) (emphasis added). The fact that a prior attempt to remove was unsuccessful does not preclude a subsequent successful removal.[1]

Defendant next challenges the magistrate judge's report by stating that because the Texas Constitution does not recognize a cause of action for monetary damages, plaintiffs only basis for recovery would be under the U.S. Constitution. *See, e.g., Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1306 (5th Cir.1995), *cert. denied sub nom,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996)). As support, defendants point to plaintiffs' interrogatory answer that addresses the amount of damages sought for each cause of action. In their response plaintiff's state that they seek damages in the amount of $200,000 for constitutional violations. Thus, defendants conclude that plaintiffs have invoked federal question jurisdiction.

■ A review of Fifth Circuit case law does not definitively support defendants argument. In *Eugene v. Alief Indep.*

*Sch. Dist.,* 65 F.3d 1299 (5th Cir.1995), *cert. denied sub nom,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996)), the case defendants cite for support, the Court of Appeals stated in *dictum* that "Texas does not appear to recognize violations of its constitution as an independent tort." *Eugene,* 65 F.3d 1299, 1306 (5th Cir.1995), *cert. denied sub nom,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996)). The Court of Appeals, however, stated that "[t]his circuit has not passed on the question of whether an actionable 'state constitutional tort' exists under Texas law." *Id.* Thus, the issue of whether Texas courts recognize state constitutional torts is an undecided one.

■ In any event, the well-pleaded-complaint doctrine pertains solely to what appears on the face of the complaint without reference to interrogatory answers or other extraneous evidence. In their state petition, plaintiffs seek injunctive relief and not monetary damages for a violation of their state constitutional rights. Alternatively, plaintiffs seek monetary damages for a number of common law torts. Because subject matter jurisdiction is determined at the time of removal defendants cannot now point to an interrogatory answer to support their argument that plaintiffs have sought monetary damages for state constitutional violations and therefore have invoked federal question jurisdiction.

As to the fourth reason advanced by the magistrate judge, defendants object to the conclusion that the terms "due process" and "due course of law" are synonymous and can be used interchangeably to invoke rights under the Texas Constitution. Defendants disagree with the Magistrate Judge's reliance on *Mabee v. McDonald,* 107 Tex. 139, 148, 175 S.W. 676, 680 (1915),

---

1. *See Fritzlen v. Boatmen's Bank,* 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551 (1909) (An order remanding a case does not control the right to make a second application for removal if, because of subsequent proceedings or the conduct of the parties, the case becomes

removable); *see also Covington v. Indemnity Ins. Co. of N. Am.,* 251 F.2d 930 (5th Cir.) (implicitly recognizing that a second removal is proper following a change in circumstances) *cert. denied,* 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958).

*rev'd on other grounds,* 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917), for the maxim that the "due course" clause in the Texas Constitution is in all respects synonymous with the "due process" clause in the United States Constitution. Instead, defendants contend that the *Mabee* court held that protections afforded by the "due course of law clause" in the Texas Constitution are coterminous with those afforded by the "due process" clause of the United States Constitution.

Defendants' argument ignores and is contrary to the precise language employed by the *Mabee* court. In discussing the genesis of the words "due process," the *Mabee* court stated:

> [T]he phrase [due process] came to us from England.... [In the United States] it operates upon every department of federal and state government— executive, legislative, and judicial.. The same expression, or some words of similar import, such as 'due course of the law of the land, have been embodied in the Constitution of almost every American state. 'Due process of law,' as used in the fourteenth amendment, and 'due course of the law of the land,' as used in article 1, § 19, of the Constitution of Texas, and in the Constitutions of many of her sister states, according to the great weight of authority, are, in nearly if not all respects, practically synonymous.

*Id.* (citations omitted).

Further, as support for their argument that the terms "due process" and "due course" are distinct, defendants cite an unpublished order addressing a motion for a preliminary injunction entered in *Penny Thomas v. Johnson City Indep. Sch. Dist.,* No. A–98–CA–246–SS (W.D.Tex. May 4, 1998). In *Thomas,* the plaintiff alleged a violation of his due process rights and his rights to due course of law in violation of the Texas Constitution. In the court's order, the district judge stated that plaintiff's motion to remand had previously been denied based on an inclusion in the pleadings of a claim for violation of due process rights.

▆▆▆▆ The *Thomas* order is of little consequence to the issue before the court in the instant suit. Generally, unpublished decisions or opinions have no precedential value other than the persuasiveness of their reasoning. *See, e.g., In re Leimer,* 724 F.2d 744, 745 (C.D.Neb.1984). An opinion which is not published is written primarily for the parties who are already knowledgeable of the facts of the particular case. For this reason, most unpublished decisions do not contain a comprehensive analysis of the legal issues decided by the court. Moreover, a decision in one federal district court is not binding precedent on another.[2]

Here, the *Thomas* order was a ruling on a motion for a preliminary injunction and not a ruling on the issue of remand. In the order, the court briefly mentions the reason that it denied a motion to remand, specifically that plaintiff had pled a federal cause of action under the due process clause of the U.S. Constitution. The *Thomas* court does not cite any precedent for its ruling nor does it provide any analysis for its decision. The order would only be useful to the resolving the instant controversy if it had set forth a thorough analysis of the remand issue that is now before this court.

From a careful reading of the *Thomas* order it is infeasible to glean how the court reached its decision. Thus, because the *Thomas* order lacks any precedential weight and does not provide a rationale for its decision not to remand, this court cannot sustain defendant's objection on this basis.

**2.** *See, e.g., United States v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569 (7th Cir.1987) (A single district court decision has little precedential effect and is not binding on the court or even on other district judges in the same district).

For the reasons stated defendants' objections under the well-pleaded-complaint doctrine are overruled.

## B. Defendants' Objections under the Artful Pleading Doctrine

Defendants object to the magistrate judge's finding that the artful pleading doctrine is applicable to the instant case. Defendants state that the artful pleading doctrine is inapplicable here because the doctrine only applies where a federal cause of action completely preempts a state cause of action. Thus, defendants claim they are not required to demonstrate the absence of any viable claim under Texas law in order to show that plaintiffs have invoked federal law.

■■■ Defendants' assertion that the artful pleading doctrine applies to only one type of suit is inaccurate. Another category of cases where the artful pleading doctrine applies involve attempts by plaintiffs to mask by artfully pleading a federal question that not only is intrinsic to a plaintiff's cause of action, but because of its centrality also constitutes adequate grounds for removal. *See* 14B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3722 (1998) (footnotes omitted). The rationale behind this category of the cases is that if a plaintiff's claims had been well pleaded the federal question would have appeared on the face of the complaint. The instant case falls into this category of cases. Thus, the magistrate judge correctly applied the artful pleading doctrine. Defendants' objection on this basis is overruled.

## III. CONCLUSION

After making a *de novo* review of the record, this court concludes that all objections are overruled and the findings of fact and conclusions of law of the magistrate judge are correct and the reports of the magistrate judge are adopted. A separate order will be entered.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PLAINTIFF'S MOTION TO REMAND

HINES, United States Magistrate Judge.

This action, filed originally in state court, was removed to federal court. (Docket No. 1.) Now pending is plaintiffs' timely motion to remand. (Docket No. 8.)

This matter is referred to the undersigned United States magistrate judge for consideration of pretrial matters pursuant to section 636(b) and (c) of Title 28, United States Code, and Local Rules for Assignment of Duties to United States Magistrate Judges. This Report and Recommendation addresses the motion to remand.[1]

### I. NATURE OF THE CASE

Plaintiffs are parents of Hayley Dardeau, who was a minor when suit was filed. Hayley attended West Orange–Stark High School in Orange County, Texas, (hereinafter "high school"). She graduated in the class of 1998. (Docket No. 1, Exh. A at 2.)

Haley is graced with congenital high intellect and an admirable work ethic. Thus, her academic accomplishments in high school were exceptional. At the end of her junior year, she achieved top academic ranking in her class. During her senior year, Haley signed up for a noncredit, volunteer position as an Office Aide. However, she changed her mind and transferred instead to a Vocal Ensemble Group class. This class was graded and provided credit towards graduation. As was customary for Haley, she earned a top grade.

---

1. A final order to remand a case to state court is a case-dispositive matter under 28 U.S.C. § 636(b)(1)(A) so that, absent consent of the parties, the magistrate judge may only recommend appropriate action by the district judge. *In Re U.S. Healthcare,* 159 F.3d 142 (3rd Cir.1998).

Plaintiffs allege that high school officials informed Hayley on March 1, 1998, near the end of her senior year, that she ranked first out of 184 students, and would be class valedictorian. (Docket No. 1, Exh. A at 3.) Shortly before graduation, however, on May 6, 1998, Hayley's parents, Dale and Barbara Dardeau, were notified that their daughter would not become valedictorian. Rather, she would graduate number three academically.

Hayley's sudden demotion to number three apparently occurred because two students who eventually graduated ahead of Hayley took an honors psychology class during their senior year. Honors classes received greater weight in determining final grade point averages than regular classes. Hayley's senior year vocal ensemble class was not an honors class. Thus, her weighted average went down.

For Hayley, this was most unfortunate. She would have retained her number one rank had she stayed in the non-credit Office Aide position. She did not need additional credits to graduate, but volunteered to take on additional classwork. Thus, Hayley was penalized regarding class rank for her commendable undertaking of extra work.

Believing that under these circumstances, Hayley was entitled to top academic ranking, plaintiffs filed suit in 260th Judicial District Court in Orange County, Texas against the West Orange–Cove Independent School District (hereinafter "School District"), Donald Jeffries, the superintendent, and, Joy Holland, a guidance counselor for the high school. Plaintiffs allege several causes of action in the Original Petition filed in state court on May 29, 1998.

Against defendants Jeffries and Holland individually, plaintiffs allege conspiracy to commit defamation, intentional infliction of emotional distress, and legal malice. Against the School District and Jeffries in his official capacity, plaintiffs allege: "(1) deprivation of Hayley's protected property and liberty interests without due process of law; (2) retaliation against Hayley and her parents for exercising their rights under the Texas Constitution; (3) implementation of an unconstitutionally vague policy for selection of class honors; and, (4) deprivation of Hayley's constitutionally protected interests without due process and course of law."

Defendants timely removed the suit to federal court based on federal question jurisdiction. *See* 28 U.S.C. § 1331 (1998). Defendants' removal notice asserts that federal jurisdiction exists because plaintiffs allege Due Process claims arising under the United States Constitution. (Docket No. 1 at 2.)

## II. THE MOTION TO REMAND

Plaintiffs move to remand this suit for lack of subject matter jurisdiction. (Docket No. 8.) Plaintiffs argue that they assert claims under Texas law only. In support, plaintiffs contend that their state court petition neither cited nor invoked the Constitution or laws of the United States. (Dockt. No. 8 at 2.)

Defendants respond that because plaintiffs alleged violations of rights to both "due process" and "due course" of law, they perforce are alleging claims under both federal and state constitutions. The term "due process" appears only in the United States Constitution while "due course" appears only in the Texas Constitution. Defendants deduce that if plaintiffs only intended to bring suit under the Texas Constitution, they would not have alleged a violation of a right to "due process." In other words, there was no need to include both phrases unless the plaintiffs intended to sue under both federal and state constitutions.

Defendants argue further that plaintiffs cannot avoid federal jurisdiction by "misstating the contents of their Petition [sic] Sloppy use of language is a problem in any setting ... [i]t is intolerable in a United States Court." (Docket No. 12 at 3.) Specifically, defendants argue that the "well-

pleaded complaint" rule dictates the conclusion that plaintiffs invoked federal law.

Plaintiffs reply that had they intended to seek relief under the U.S. Constitution, they would have pleaded under 42 U.S.C. § 1983 because that is a "mandatory procedural device for recovery under the United States Constitution." Plaintiffs contend that Texas' term "due course of law" is synonymous and parallel to the meaning of the federal term "due process" and they used the term in their pleadings only as a modern synonym. Thus, plaintiffs argue that any difference between the terms "due process" and "due course" is purely semantical.

## III. REMOVAL OF CASES FROM STATE COURTS

The right to remove a case from state to federal court is an unconventional procedure:

> Removal is quite an anomalous form of subject matter jurisdiction. It gives a defendant who has been sued in a state court of competent jurisdiction the right to substitute a federal forum when he or she chooses to do so for the forum originally selected by the plaintiff, although the defendant's choice of a federal forum is extremely limited.
>
> There was no procedure comparable to removal at English common law, nor is removal jurisdiction mentioned in the Constitution. Nevertheless, there has been some provision for the removal of cases from state to federal courts ever since the original Judiciary Act of 1789.

14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3721 (1998) (footnotes omitted).

Thus, the right of removal is purely American and purely statutory. Congress appears to have been motivated by two principal factors. First, as to federal question cases, Congress sought to capitalize on and develop in federal judges better expertise on questions of federal law that

state court judges might not be as competent to *Boys Mkt. v. Retail Clerks Union,* 398 U.S. 235, 246, 90 S.Ct. 1583, 1590, 26 L.Ed.2d 199 (1970) (federal question removal provisions may have been intended to provide a forum for the protection of federal rights or to encourage the development of expertise by federal courts in interpretation of federal law). Second, the right of removal was designed to protect nonresidents from the local prejudices of state courts. *See Dugas v. Jefferson County,* 911 F.Supp. 251, 253 (E.D.Tex. 1995).

■ Title 28, United States Code section 1441, currently governs removal of state actions to federal district court. 28 U.S.C. § 1441 (1994). Under section 1441, only actions over which federal courts have original jurisdiction may be removed. *Id.* While the right of removal exists beyond question, federal courts generally construe removal statutes strictly to prevent encroachment on state courts' jurisdiction and to preserve comity, as well as to protect rights of plaintiffs to fair treatment. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Leffall v. Dallas Indep. School Dist.,* 28 F.3d 521, 524 (5th Cir.1994).

■ Comity is the principle whereby the courts of one jurisdiction give effect to laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. The Supreme Court noted in 1941 that in order to maintain the rightful independence of state governments, federal courts must "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Shamrock Oil & Gas Corp.,* 313 U.S. at 108–109, 61 S.Ct. at 872. This principle is the core rationale behind why courts strictly construe removal statutes.

■ In addition, fundamental fairness dictates that if a federal court has doubts about its jurisdiction, it should resolve those doubts by ordering a remand. *See, e.g., Moore v. Mobil Oil Corp.,* 904 F.Supp.

587 (E.D.Tex.1995); *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 694 (5th Cir.1995). Otherwise, the state-court-plaintiff would risk the possibility of winning a final judgment in federal court only to have it determined later on appeal that the court lacked jurisdiction. This would require the plaintiff to return to state court and relitigate the case. *See Radeschi v. Commonwealth of Pennsylvania*, 846 F.Supp. 416 (D.C.Pa.1993) (lack of jurisdiction would make any judgment in a case void and for that reason removal statutes should be strictly construed).

When a plaintiff moves to remand for lack of jurisdiction, the burden falls to the defendant to establish jurisdiction and the suitability of removal. *See Allen v. R & H Oil & Gas. Co.*, 63 F.3d 1326, 1334 (5th Cir.1995)); *Peninsular Occidental S.S. Co.*, 287 F.2d 252, 253–54 (5th Cir. 1961).

Whether federal question jurisdiction exists in a removed action is based or the allegations in a plaintiff's "well pleaded complaint." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The "well pleaded complaint" rule provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. *Id.* Under the rule, federal question jurisdiction depends on whether "there appears on the face of the complaint some substantial, disputed question of federal law." *See Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). This rule requires the federal question to be evident from the complaint and not to arise from any defense the defendant might raise to defeat the cause of action. *Id.*

The party who brings the suit is master of what law is invoked. *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913). Thus, even though a federal claim is available to a plaintiff, if a plaintiff chooses not to assert that federal claim, then the defendant cannot remove the claim to federal court on the basis of a possible asserted claim. *Carpenter*, 44 F.3d at 366.

There is, however, an exception. The "artful pleading doctrine" thwarts a plaintiff's choice of a state forum when the federal court concludes that regardless of the plaintiff's characterization, the plaintiff essentially asserts a federal claim. Thus, courts recognize that plaintiffs may, in some instances, purposefully obfuscate a federal question and artfully plead what properly should be deemed a federal claim in pure state law terms solely to defeat removal. *Id.* The artful pleading doctrine provides a remedy for this type of abuse, but "does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character." *Id.* at 367.

As with any other basis for removal, however, defendants have the burden of proving that removal was proper under the artful pleading doctrine and that the court has subject matter jurisdiction. *Yawn v. Southern Ry. Co.*, 591 F.2d 312, 316 (5th Cir.) *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979). Again, any doubt is to be resolved against removal and in favor of remand. *Id.* Under the artful pleading doctrine, this requires a showing by the defendant that plaintiff has no legitimate or viable state law claim. *Carpenter*, 44 F.3d at 366.

## IV. SUBJECT MATTER JURISDICTION

Unless otherwise provided by statute, federal court jurisdiction requires: (1) complete diversity of citizenship between adverse parties and at least $75,000 at issue, *see* 28 U.S.C. § 1332 (1997); or (2) a federal law nexus, *see* 28 U.S.C. § 1331 (1993). If neither of these requirements is met, federal courts with limited jurisdiction, do not have authority to hear the

matter and must dismiss it for adjudication in the proper tribunal.[2]

### V. ANALYSIS

#### A. The Well–Pleaded Complaint Debate

Defendants removed this action from state court on the ground that this court has federal question jurisdiction. As noted earlier, the jurisprudence places the burden on defendants to establish that jurisdiction and the suitability of the case for removal. Finally, doubts must be resolved in favor of remand. *See* Section III., supra.

▆▆ To shoulder their burden, defendants invoke the "well-pleaded complaint" doctrine. They argue, in effect, that plaintiffs hoisted themselves on their own petard by alleging that defendants violated Hayley Dardeau's rights to "due process." Since federal law grants rights to due process *in haec verba,* while Texas law does not, defendants contend that the state petition clearly pleads a federal cause of action.

This argument, while cogent, is not conclusive. There are at least four plausible arguments for reaching the opposite conclusion. There is no express reference in the petition to the federal Constitution or a federal statute as providing a substantive right or cause of action. There is no invocation of Title 42 U.S.C. § 1983, the customary procedural vehicle for asserting federal claims. By contrast, the state petition does specifically invoke the Texas constitution and common law causes of action

under state law. Finally, plaintiffs' current assurances, as masters of their claims, that they used due process language only as a modern synonym for Texas' more archaic term, "due course" are entitled to some weight.

Resort to the Texas case principally relied on by defendants also is not dispositive. In *Washington v. Fort Bend Indep. Sch. Dist.,* 892 S.W.2d 156, 158 (Tex. App.—Houston 1994, writ den'd), a former assistant principal of a high school sued the school district for wrongful termination alleging, among other things, due process violations. On appeal, the Texas court, stated that plaintiff's use of the term "due process," could be favorably construed as invoking a federal constitutional claim, but it did not unequivocally declare such to be the case. *Id.* at 159. Rather, the court simply opined that the trial court erred in not affording plaintiff an opportunity to amend to clarify whether she sought to vindicate federal rights. *Id.*[3]

Under these circumstances, considerable doubt exists as to whether plaintiffs' state court petition asserts a federal cause of action. Assertions of denial of "due process" may implicate federal law, but may not. Certainly, the petition does not constitute a well-pleaded complaint in that respect. Therefore, defendants fail to carry their burden of establishing federal question jurisdiction under the well-pleaded-complaint doctrine.

#### B. Artful Pleading

▆▆ A more serious and relevant question is whether the court should invoke the

---

**2.** *Byers v. McAuley,* 149 U.S. 608, 618, 13 S.Ct. 906, 910, 37 L.Ed. 867 (1893) ("[t]he jurisdiction of the federal courts is a limited one, depending upon either the existence of a federal question or diverse citizenship of the parties. Where these elements of jurisdiction are wanting, it cannot proceed, even with the consent of the parties").

**3.** *Washington v. Fort Bend Indep. Sch. Dist.,* 892 S.W.2d 156, 158 (Tex.App.—Houston 1994, writ den'd), does not involve analogous facts. Unlike the instant case, the plaintiff argued that she intended to invoke federal

constitutional rights by pleading violations of "due process." If federal rights were invoked, she arguably was excused from exausting state administrative remedies before instituting suit. The Texas Court of Appeals agreed that allegations of denial of "due process," construed most favorably to plaintiff, could be viewed as asserting a federal right. Thus, the appellate court concluded that the trial court erred by not allowing plaintiff to amend to unequivocally assert federal claims before dismissing for failing to exaust administrative remedies.

artful pleading doctrine *sua sponte* as a basis for denying plaintiffs' motion to remand. Subtly and unobtrusively inserting due process allegations among claims purporting to plead causes of action in pure state law terms certainly fits the paradigm of artful pleading designed to defeat removal of an essentially federal claim. Thus, interests of justice warrant examining the court's subject matter jurisdiction from that perspective as well.

The abstruseness that prevents the court from concluding that the state court petition clearly invoked federal rights does not compel a similar conclusion in an artful pleading analysis. Indeed, ambiguity is the essence of an artful pleading designed to hide a federal claim. Regardless, a cloudy picture complicates the decision.

The conundrum facing the court could have been resolved simply. Using the procedure approved in *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia,* 988 F.2d 559 (5th Cir.1993), the court invited plaintiffs and their counsel to clarify their state court petition. The court invited judicial stipulations that would insure that their due process language was not a wolf in sheep's clothing. Such stipulations also would have bound plaintiffs not to pursue federal claims following remand.[4] Plaintiffs declined to so stipulate. Instead, they responded to the court's invitation with a brief reiterating earlier legal arguments.

In short, plaintiffs continue to "talk the talk", advancing their contention that the state petition asserts no federal claims. However they expressly decline to "walk the walk" by unequivocally abjuring all effort to impose liability under federal law following remand Since talk is cheap, plaintiffs' reluctance gives considerable cause for pause.

■ Ultimately, however, the decision is not governed by the court's subjective view as to whether plaintiffs are playing coy. The fulcrum of artful pleading analysis centers on whether a defendant carries its burden of showing that a plaintiff has no legitimate or viable state court claim under the language of the state court petition. *Carpenter,* 44 F.3d at 366. In the instant case, this burden requires defendants to show that plaintiffs cannot recover for due process violations under Texas law.

■ Defendants have not made that showing. The dictum of *Washington,* 892 S.W.2d 156, 158 (Tex.App.—Houston 1994, writ den'd) does not hold that Texas courts refuse to entertain a state law claim for denial of due process. To the contrary, however, Texas courts have long recognized that "due process" is synonymous with "due course of law" as used in the Texas constitution. *Mabee v. McDonald,* 107 Tex. 139, 148, 175 S.W. 676, 680 (1915), rev'd on other grounds, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917). The court in *Mabee* stated that " '[d]ue process of law' as used in the fourteenth amendment and 'due course of the law of the land' as used in ... the Constitution of Texas and in the Constitutions of many of her sister states, according to the great weight of authority, are, in nearly if not all respects, practically synonymous." *Id.*

Thus, plaintiffs may assert deprivation of due process under the Texas constitution without necessarily invoking federal

---

4. In a February 2, 1999 order, the court invited plaintiffs and their counsel to clarify their state petition by stipulating that they:

   A. Have not and will not assert in state court any cause of action or claim arising under the constitution or laws of the United States;

   B. Waive any right to avoid the stipulation based on newly discovered or unknown facts;

   C. Covenant not to execute on any state court judgment imposing liability under the constitution or laws of the United States; and

   D. Agree that defendant may remove the action again, and without objection by plaintiffs, if plaintiffs attempt to assert a federal claim following remand.

   *See* (Dockt.No. 44)

law. This conclusion dictates that plaintiffs' motion to remand should be granted. Upon remand, the pure state law causes of action may proceed to trial in the state forum chosen by plaintiffs. If plaintiffs, contrary to arguments advanced here in support of the motion to remand, attempt thereafter to assert federal claims in what they perceive as a more favorable forum, defendants will not be prejudiced. Title 28 U.S.C. § 1446(b) imposes no time limit on removal of federal question cases. They may be removed at any time prior to entry of judgment provided the notice of removal is filed within thirty days after the defendant first ascertains that the case has become removable.[5] The fact that a prior attempt to remove was unsuccessful will not preclude a subsequent successful removal.[6]

## RECOMMENDATION

The court should grant plaintiffs' motion to remand the instant suit for lack of subject matter jurisdiction. This will render all other pending motions moot.

### OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R.CIV.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to

factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

---

**5.** There is only one time limitation for removal of a case, such as the one here, that takes on a federal question at some point during litigation: a notice of removal must be filed within 30 days of a defendant's receipt of the order, filing, or other paper from which it may first be ascertained that the case is or has become removable. *FDIC v. Taylor,* 727 F.Supp. 326 (S.D.Tex.1989). Title 28 U.S.C. section 1446 does not prevent removal of federal question cases before state court judgment *Id.*

**6.** See *Fritzlen v. Boatmen's Bank,* 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551 (1909) (An order remanding a case does not control the right to make a second application for removal if, because of subsequent proceedings or the conduct of the parties, the case becomes removable); *see also Covington v. Indemnity Ins. Co. of N. Am.* 251 F.2d 930 (5th Cir.) (implicitly recognizing that a second removal is proper following a change in circumstances) *cert. denied,* 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958).